# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

| | | |
|---|---|---|
| Independent Producers Group | ) | |
| and Independent Producers Group | ) | |
| Represented Program Supplier | ) | |
| | ) | |
| Appellants, | ) | |
| v. | ) | Case No. 13-1132 |
| | ) | |
| The Librarian of Congress and | ) | |
| The Register of Copyrights | ) | |
| | ) | |
| Appellees. | ) | |

_____ )

**APPEAL OF INDEPENDENT PRODUCERS GROUP FROM RULINGS OF THE COPYRIGHT ROYALTY BOARD, REGISTER OF COPYRIGHTS, LIBRARIAN OF CONGRESS**

**CORRECTED APPELLANT'S BRIEF**

Brian D. Boydston, Esq.
Pick & Boydston, LLP
10786 Le Conte Ave.
Los Angeles, CA  90024

(213)624-1996
brianb@ix.netcom.com

Counsel for Appellant Independent Producers Group

## <u>CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES</u>

**Parties.** The undersigned represents Worldwide Subsidy Group, LLC, doing business as Independent Producers Group ("IPG"), claimant and appellant in this matter, and no other party. Appellees are the Librarian of Congress and the Register of Copyrights. Intervenors are the DEVOTIONAL CLAIMANTS, MPAA-REPRESENTED PROGRAM SUPPLIERS, NATIONAL ASSOCIATION OF BROADCASTERS, and JOINT SPORTS CLAIMANTS.

**Rulings.** IPG appeals the order of the Copyright Royalty Board ("CRB") dated March 11, 2013 in Docket No. 2008-1 CRB SD 98-99 (Phase II) (attached to the Appendix as Item 10), on the grounds that the CRB violated 5 U.S.C. § 706 and the decisional law thereunder by issuing an order that, among other things was arbitrary, transgressed unequivocal statutory commands, was not in accordance with law and was unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

**Related Cases.** There are no related cases.

Respectfully submitted,

Dated October 17, 2013            _____/s/_____

Brian D. Boydston, Esq.

PICK & BOYDSTON, LLP

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Circuit Rule 26.1 of the U.S. Court of Appeals for the D.C. Circuit, Appellant hereby asserts that there is no parent corporation or publicly held corporation holding 10% or greater ownership interest in Appellant.

Appellant is a claimant or agent of claimants of cable retransmission royalties distributed by the Copyright Royalty Board pursuant to 17 U.S.C. § 803.

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . .  6

STATEMENT OF ISSUES PRESENTED FOR REVIEW . . .  6

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . .  7

STATEMENT OF FACTS

      A. The Devotional Claimants' Motion for Final
      Distribution of 1998 Cable Funds. . . . . . . . . . . . . . . . . .  7

      B. IPG's Motion for Reconsideration of the
      January 31, 2013 Order. . . . . . . . . . . . . . . . . . . . . . . . . . .  10

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . 16

ARGUMENT

      THE DECISION OF THE CRB TO MAKE A FINAL
      DISTRIBUTION OF THE 1998 CABLE ROYALTY FUNDS
      FOR THE DEVOTIONAL PROGRAMMING CATEGORY
      WAS ARBITRARY, AND CONTRAVENED THE CRB'S
      STATUTORY OBLIGATIONS. . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLEOF AUTHORITIES

### CASES

*Greater Yellowstone Coalition, Inc. v. Servheen,

665 F.3d 1015, 1023 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . .. . . . . . 17

*Judulang v. Holder, 565 U.S. __, 132 S.Ct.476, 484 . . . . . . . . . . . 17

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,

463 U.S. 29, 43, 103 S.Ct. 2856, 2867 (1983) . . . . . . . . . . . . . . . . 17

*National Broadcasting Company, Inc. v. Copyright Royalty Tribunal,

848 F.2 1289 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tremain v. Bell Indus., Inc.,

196 F.3d 970, 976, fn. 5 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 17

### STATUTES

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

17 U.S.C. § 803 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

17 U.S.C. § 803(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**\*Cases upon which Appellant principally relies.**

## JURISDICTIONAL STATEMENT

Appellant appeals from the final orders of the Copyright Royalty Board dated January 31, 2013 and March 11, 2013.  Appellant timely filed its notice of Appeal on April 10, 2013, pursuant to 17 U.S.C. § 803(d).


## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the Copyright Royalty Board erred by attributing Appellant with constructive or actual knowledge of orders issued by the U.S. Copyright Office and Copyright Royalty Board, dated November 19, 2003 and July 11, 2007.

2. Whether the Copyright Royalty Board erred by determining that "There is no suggestion or proof that the July 29, 2003 settlement agreement between Devotional Claimants and IPG, which served as the basis for making the distribution, is defective or otherwise invalid."

3. Whether the Copyright Royalty Board erred by ordering the final distribution of 1998 cable royalties attributable to the devotional programming category.

## STATEMENT OF THE CASE

Worldwide Subsidy Group LLC (a Texas limited liability company) dba Independent Producers Group ("IPG") hereby appeals the rulings of the Copyright Royalty Board ("CRB"), dated January 31, 2013 and March 11, 2013,[1] as they relate to distribution of the 1998 cable royalty fund. The rulings ordered the final distribution of 1998 cable royalties attributable to the devotional programming category, thereby dismissing IPG's claims thereto.

## STATEMENT OF FACTS

### A. __The Devotional Claimants' Motion for Final Distribution of 1998 Cable Funds.__

In response to a motion brought by various parties (including the "Devotional Claimants") seeking, *inter alia*, the final distribution of 1998 cable royalty fund maintained by the CRB,[2] on January 31, 2013, the CRB issued its "Order Granting In Part Motion for Final Distribution of the 1998 and 1999 Cable Royalty Funds and the 1999 Satellite Royalty Funds".[3] In relevant part, such ruling ordered the final distribution of the 1998 cable royalty fund. IPG had

---

[1]  The rulings were respectively entitled "Order Granting in part Motion for Final Distribution of the 1998 and 1999 Cable Royalty Funds and the 1999 Satellite Royalty Funds", and "Order Denying Independent Producers Group's Motion for Reconsideration".

[2]  App. 1.

[3]  App. 4.

opposed such motion, as pertains to the 1998 cable royalty fund, on the grounds

that IPG had never relinquished its devotional programming claims in such fund,[4]

and had continued to maintain its claims thereto.[5]

IPG informed the CRB of its understanding that the Devotional Claimants

disputed IPG's position on two bases, only one of which is relevant for purposes of

this proceeding.[6]  Specifically, IPG noted that the Devotional Claimants had

---

[4]   App. 2.  As described more thoroughly in IPG's "Opposition to the Devotional
Claimants' Motion to Dismiss or, In the Alternative, Motion for Summary
Affirmance", filed with this Court on June 10, 2013, cable distribution proceedings
before the CRB are divided between Phase I and Phase II proceedings.  At Phase I,
the aggregate royalties are divided amongst the representatives of eight major
categories of copyrightable content (e.g., sports programming, devotional
programming, etc.).  At Phase II, the royalties are divided amongst the claimants
*within* each Phase I category.

[5]   App. 2.

[6]   The Devotional Claimants' lead argument was that they were a third party
beneficiary of an agreement between IPG, the Motion Picture Association of
America ("MPAA"), and the Librarian of Congress.  IPG described how its
agreement with the MPAA and the Librarian had no bearing on the devotional
programming category (only the "program suppliers" category), that the
Devotional Claimants had not participated in the agreement nor were even entitled
access thereto, nor had the Devotional Claimants been involved in recent litigation
between IPG and the MPAA relating to the enforceability of such agreement.  IPG
described how the Devotional Claimants sought to have the CRB apply a
hypertechnical application of language falling in one portion of the agreement, and
contradicted by other portions of the agreement, and noted that the Devotional
Claimants had only obtained a copy of such settlement agreement after it was
attached to pleadings submitted in litigation between IPG and the MPAA.

The Devotional Claimants' argument was soundly rejected both by the CRB's
Order of January 31, 2013 (App. 4) and the CRB's Order of March 7, 2013,

previously asserted to have settled directly with IPG for its 1998 cable claims in the devotional programming category.  Notwithstanding, IPG explained that the Devotional Claimants had *refused to provide IPG a copy of the agreement to which IPG was ostensibly a party*, on grounds of "confidentiality".[7]  IPG made clear that it had "absolutely no details regarding such alleged agreement, even the date of its existence."[8]  Consequently, IPG argued that the CRB was not entitled to terminate the 1998 cable royalty proceedings relating to the devotional programming category, and was compelled to initiate distribution proceedings relating to the devotional programming category.

In its reply thereto, the Devotional Claimants asserted that they had already settled with IPG all claims relating to 1998 cable royalties for the devotional category, pursuant to "a separate agreement entered into in July 2003".[9]  Notably, however, and despite IPG's assertion that no such agreement existed, the Devotional Claimants failed to attach a copy of the ostensible settlement agreement.  Consequently, neither IPG or the CRB had ever seen a copy of the settlement agreement upon which the Devotional Claimants purported to rely for

---

denying the Devotional Claimants' motion for reconsideration on the matter (App. 9).

[7]  App. 2 at pp. 4-5.

[8]  App. 2 at p.5.

[9]  App. 3 at 2.

the purpose of having IPG's 1998 cable royalty claims (in the devotional

programming category) dismissed in their entirety.

Notwithstanding, the CRB'S Order of January 31, 2013 accepted the

Devotional Claimants' unsubstantiated assertion that the Devotional Claimants and

IPG had entered into a settlement agreement.  In relevant part, the order

determined that the 1998 cable royalty fund was ready for final distribution,

stating:

> "IPG's assertion that a controversy remains for the 1998 cable funds
> with respect to the devotional programming category is belied by the
> fact that the Librarian has already made a final distribution of those
> monies.  *See* Order, Docket No.2001-8 CARP 98-99 (November 19,
> 2003); *see also*, Acknowledgement of Reallocation of 1998 Cable
> Royalty Funds, Docket No. 2001-8 CARP CD 98-99 (July 11, 2007).
> *There is no suggestion or proof that the **July 29, 2003** settlement
> agreement between Devotional Claimants and IPG, which served as
> the basis for making the distribution, is defective or otherwise invalid.*
> Thus, there are no controversies remaining for the 1998 cable funds."
> (emphasis added)

App. 4 at 2-3.

### B. IPG's Motion for Reconsideration of the January 31, 2013 Order.

Prior to and following the January 31 Order, IPG had endeavored to obtain

the *July 29, 2003* settlement agreement that the Devotional Claimants insisted

existed.[10]  Despite numerous requests, the Devotional Claimants steadfastly

refused to provide IPG a copy thereof, and IPG filed its Motion for

Reconsideration of such ruling.[11]

The  CRB's order was problematic for two reasons.  First, the CRB was

affirming the validity of a settlement agreement that neither it or IPG had ever

seen.  Second, the CRB relied on a novel argument that had not been presented by

Devotional Claimants or any party, i.e., that an order of final distribution had

already issued on November 19, 2003 that foreclosed IPG's objection nearly a

decade later.

In IPG's motion for reconsideration, IPG reiterated that IPG had no

knowledge of the alleged settlement agreement, and had again unsuccessfully

requested a copy of the same from the Devotional Claimants.[12]  In fact, IPG

---

[10]   The Devotional Claimants' first assertion of the "July 29, 2003" contract date
was made in its "Reply to Opposition of IPG to Motion for Final Distribution of
1998 and 1999 Cable Royalty Funds and 1999 Satellite Royalty Funds", filed
September 11, 2012.  *See* App. 3 at 4.

[11]   App. 5.

[12]   While the logical response of the Devotional Claimants would have been to
simply provide IPG a copy of the agreement to which the Devotional Claimants
asserted IPG was a party, instead the Devotional Claimants refused - - again
asserting that it could not provide IPG a copy of the agreement on grounds of
"confidentiality".  The Devotional Claimants did, however, provide IPG with the
purported signature page executed by the purported IPG representative, but such
document reflected signature in November 2003, four months following the "July
29, 2003" contract date asserted previously.  *See* discussion *infra*.

observed that the Judges' ruling could not logically rely on the agreement that the Devotional Claimants purported to exist - - the Judges have never witnessed the supposed agreement.  Rather, the CRB's ruling could only logically rely on the novel argument raised *sua sponte* by the CRB and not addressed in the briefs, i.e., that orders were previously issued to which IPG should presumably have been aware (see above).  Notwithstanding, IPG pointed out that such orders were not published in the Federal Register (thereby giving IPG constructive notice), nor served on IPG (thereby giving IPG actual notice).  The CRB's ruling, therefore, was attempting to hold IPG accountable for notices that had never been provided to IPG.

In fact, good reason existed as to why the Devotional Claimants had not previously asserted the argument eventually relied on by the CRB for its decision. As IPG revealed in its motion for reconsideration, the motion that precipitated the November 19, 2003 order making final distribution of 1998 cable royalties in the devotional programming category *was not even signed by an IPG representative*, was not served on IPG, and was signed by Arnold Lutzker, Esq. (counsel to an adverse party) purporting to sign on behalf of IPG.  *See* App. 5 at Exh. A. Consequently, not only had IPG not been served with the orders upon which the CRB relied for its decision, IPG had not even been served with the motion that precipitated the order, i.e., the motion that the Devotional Claimants filed in 2003

in order to have the Copyright Office make final distribution of 1998 cable

royalties in the devotional programming category. [13]

        In what can only be described as a vitriol-filled response, the Devotional

Claimants opposed IPG's motion for reconsideration.  Various documents were

presented, however none of which reflected that IPG had been served with either

the orders upon which the CRB relied to issue final distribution of the 1998 cable

funds, or served with the motion that precipitated the first of such orders.  Further,

no evidence was presented that IPG had authorized the Devotional Claimants to

sign the precipitating motion on IPG's behalf and, despite the continuing

involvement in these proceedings of the very individual that purported to sign on

IPG's behalf in 2003, i.e. Arnold Lutzker, Esq., Mr. Lutker conspicuously failed to

---

[13]    IPG further represented that IPG found no anecdotal evidence that an
agreement even existed - - no correspondence, no bank deposits, etc.  Indeed, other
than the assertions of certain counsel for the Devotional Claimants, there is a
dearth of evidence that an agreement ever took place and, if such agreement
actually occurred, questions immediately arise as to the actual authority of the
"IPG signatory" to enter into such an agreement.

    As had been presented to the Judges in the most recent 2000-2003 cable royalty
proceedings, during the period in which the Devotional Claimants purport to have
entered into a settlement agreement with IPG – July 29, 2003 – the majority owner
of IPG had already been embroiled in litigation with IPG's minority owner relating
to the very issue of the minority owner's authority.  Numerous regular participants
in the retransmission royalty proceedings, including but not limited to Arnold
Lutzker, Esq. (counsel for Crystal Cathedral Ministries) and Barry Gottfried, Esq.
(counsel for Christian Broadcasting Network), were expressly aware of such
proceedings and their eventual outcome, which proceedings confirmed the
minority owner's lack of authority.

submit a declaration confirming that he had been authorized to sign such precipitating motion on behalf of IPG.

Additionally, and for the first time, the Devotional Claimants presented the CRB and IPG a copy of the settlement agreement that it claims was entered into with IPG.  What was revealed, of course, is what IPG suspected - - that the Devotional Claimants were relying on a document executed by Marian Oshita, an individual whom the Devotional Claimants were expressly aware did not have the authority to enter into such agreement on behalf of IPG.  Moreover, such document was *still* only produced in a redacted fashion that omitted substantive provisions and, remarkably, contained an execution page *different* than the execution page that the Devotional Claimants had previously represented to be the execution page for the alleged settlement agreement.   Other significant discrepancies were also revealed in the Devotional Claimants' opposition brief, including the fact (also reflected by heavily redacted documents) that the monies ostensibly paid to IPG pursuant to such settlement agreement were sent to a non-IPG account.  Such discrepancies are detailed at length in the reply brief filed by IPG.[14]

The CRB's ruling on IPG's motion was confounding.  IPG clearly focused its motion for reconsideration on the simple fact that the orders upon which the CRB relied to disregard IPG's claims had not been published in the Federal

---

[14]   App. 8.

Register, and had not been served on IPG, thereby providing IPG no notice thereof.

No challenge to these irrefutable facts was even made by the Devotional

Claimants.  Further, IPG demonstrated that it had not even been served with the

precipitating motion upon which the November 19, 2003 had been issued.

Nevertheless, the CRB's denial of IPG's motion recited its ruling as though IPG

had made no such arguments.  Specifically, the CRB's Order of March 11, 2013

stated:

> "The basis for IPG's Motion for Reconsideration concerns one
> sentence in the *January 31 Order* . . .:  'There is no suggestion or
> proof that the July 29, 2003 settlement agreement between Devotional
> Claimants and IPG, which served as the basis for making the
> distribution, is defective or otherwise invalid.'
>
>              * * *
>
> The sentence in the January 31 Order on which IPG hangs its hat
> ignores the preceding sentence which is dispositive in this case.  To
> wit, the Librarian of Congress . . . determined in 2003 that no
> controversies existed in the devotional programming category for the
> 1998 cable royalties.  See Order Docket No. 2001-8 CARP CD 98-99
> (November 19, 2003).  Accordingly, he made a final distribution of
> those monies. [fn. omitted].  This ended the matter.  [fn. omitted].
> Any objections or challenges by IPG with respect to the 1998 cable
> fund lie – if at all, almost ten years later – with the Librarian's final
> distribution order."

App. 10.

## SUMMARY OF ARGUMENT

The Copyright Royalty Board erred by attributing Appellant with constructive or actual knowledge of orders issued by the U.S. Copyright Office and Copyright Royalty Board, dated November 19, 2003 and July 11, 2007.

Although eventually asserting that such determination was not dispositive of its ruling, to the extent relevant to any consideration, the Copyright Royalty Board erred by holding that there existed a July 29, 2003 settlement agreement between Devotional Claimants and IPG, which served as the basis for the Librarian of Congress making distribution of 1998 cable royalties.

As a result of the foregoing determinations, the Copyright Royalty Board erred by ordering the final distribution of 1998 cable royalties attributable to the devotional programming category, and disregarding IPG's claim to 1998 cable royalties in the devotional programming category.

## ARGUMENT

### THE DECISION OF THE CRB TO MAKE A FINAL DISTRIBUTION OF THE 1998 CABLE ROYALTY FUNDS FOR THE DEVOTIONAL PROGRAMMING CATEGORY WAS ARBITRARY, AND CONTRAVENED THE CRB'S STATUTORY OBLIGATIONS.

As detailed above, the basis for the CRB's orders of January 31, 2013 and March 11, 2013 appeared to be two-fold.  First, that the Librarian of Congress had

already determined that no controversies existed in the devotional programming

category, and had issued an order in connection therewith in November 2003.

Second, that "[t]here is no suggestion or proof that the July 29, 2003 settlement

agreement between Devotional Claimants and IPG, which served as the basis for

making the distribution, is defective or otherwise invalid."

When reviewing an agency decision for a violation of 5 U.S.C. § 706, the

reviewing court must consider, among other things, whether or not the agency

failed to consider an important aspect of the problem before it, and/or offered an

explanation for its decision that runs counter to the evidence before the agency, or

is so implausible that it could not be ascribed to a difference in view or the product

of agency expertise. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.

Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2867 (1983).  In so doing, the "arbitrary and

capricious" standard has been described as synonymous with the 'abuse of

discretion' standard that is common in review of district court cases. See Tremain

v. Bell Indus., Inc., 196 F.3d 970, 976, fn. 5 (9th Cir. 1999).  Thus, when

reviewing an agency action, the reviewing court must examine the reasons behind

the agency's decision and assess whether the agency considered the relevant factors

and articulated a satisfactory explanation for its action, including a rational

connection between the facts found and the choices made.  See Judulang v. Holder,

565 U.S. __, 132 S.Ct.476, 484; <u>Greater Yellowstone Coalition, Inc. v. Servheen</u>, 665 F.3d 1015, 1023 (9th Cir. 2011).

The CRB's March 11, 2013 Order suggests that only the first explanation was the basis of its decision, and that the second articulated reason was mere *dicta*. If so, then no evidence exists that the referenced determination of the Librarian of Congress (reflected by an order dated November 19, 2003), was ever served on IPG, a fact that was unchallenged by both the Devotional Claimants and the CRB. Consequently, the CRB's attempt to attribute IPG with constructive or actual knowledge thereof is arbitrary and unwarranted, and in violation of the CRB's statutory obligation to conduct proceedings for the distribution of the 1998 cable royalties attributable to the devotional programming category, all in violation of 5 U.S.C. § 706. *See generally*, 17 U.S.C. § 803.

If, by contrast, the second explanation appearing in the CRB orders is not considered mere *dicta*, then the Devotional Claimants have failed to demonstrate the existence of an enforceable agreement with IPG, much less an agreement executed by an authorized representative of IPG. This is not to suggest that the CRB has the judicial authority to rule upon whether an enforceable settlement agreement exists, which is beyond its jurisdiction. See <u>National Broadcasting Company, Inc. v. Copyright Royalty Tribunal</u>, 848 F.2 1289 (D.C. Cir. 1988). However, and as occurred in an identical circumstance before the CRB that is

detailed in its January 31, 2013 order, the CRB would at minimum be compelled to stay any proceedings pending judicial resolution of such issue. Of course, it would nonetheless be within the CRB's jurisdiction to move forward with such proceedings in light of the Devotional Claimants' refusal to produce unredacted copies of those documents that they purport to support their position. Consequently, the CRB's determination that there is "no basis" to challenge the alleged agreement between IPG and the Devotional Claimants as a basis for disregarding IPG's claim to 1998 cable royalties in the devotional programming category is similarly arbitrary, and in violation of the CRB's statutory obligation to conduct proceedings for the distribution of the 1998 cable royalties attributable to the devotional programming category, all in violation of 5 U.S.C. § 706.

## CONCLUSION

For the reasons set forth above, IPG respectfully requests that this Court reverse the CRB's orders of January 31, 2013 and March 11, 2011, to the extent that they issue a final distribution of 1998 cable royalties attributable to the devotional programming category, and remand the matter to the CRB in order for proceedings thereon to be commenced.

Respectfully submitted,

Dated: October 17, 2013                 _____/s/_____
                                        Brian D. Boydston, Esq.

California State Bar No. 155614

PICK & BOYDSTON, LLP
10786 Le Conte Ave.
Los Angeles, California 90024
Telephone:   (213)624-1996
Facsimile:   (213)624-9073
Email:       brianb@ix.netcom.com

Attorneys for Independent Producers
Group

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October, 2013, a copy of the foregoing was sent by U.S. Mail to the parties listed on the attached Service List.


_____/s/_____
Brian D. Boydston


**DEVOTIONAL CLAIMANTS:**


Clifford M. Harrington

Alison B. Rousseau

Victoria N. Lynch

Pillsbury, Winthrop, et al.

P.O. Box 57197

Washington, D.C. 20036-9997


**MPAA-REPRESENTED PROGRAM SUPPLIERS:**


Gregory O. Olaniran, Esq.

Lucy Holmes Plovnick Esq.

Mitchell, Silberberg & Knupp LLP

1818 N Street, N.W., 8th Floor

Washington, D.C.  20036

**NATIONAL ASSOCIATION OF BROADCASTERS**

John I. Stewart, Jr., Esq.

Jennifer H. Burdman

Ann Mace

CROWELL & MORING LLP

1001 Pennsylvania Ave., NW

Washington, D.C.  20004-2595

**JOINT SPORTS CLAIMANTS:**

Robert Alan Garret, Esq.

Stephen K. Marsh, Esq.

James Wood, Esq.

ARNOLD & PORTER LLP

555 Twelfth Street, NW

Washington, D.C.  20004-1206

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed.
R. App. P. 32(a)(7)(B) because:

     this brief contains 4,545 words, excluding
the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)
.

2. This brief complies with the typeface requirements of Fed. R.
App. P. 32(a)(5) and the type style requirements of Fed. R. App.
P. 32(a)(6) because:

     this brief has been prepared in a proportionally spaced typeface
using Microsoft Word in font size 14 and Times New Roman type style.

Dated:  October 17, 2013               _____/s/_____

                             Brian D. Boydston, Esq.
                             California State Bar No. 155614

                             PICK & BOYDSTON, LLP
                             10786 Le Conte Ave.
                             Los Angeles, California 90024
                             Telephone:   (213)624-1996
                             Facsimile:   (213)624-9073
                                 Email:
                                   brianb@ix.netcom.com

                             Attorneys for Independent Producers
                             Group